IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JIMMIE SMITH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 3:20-CV-00830 -MAB |
| | ) |
| **WARDEN BROOKHART, ET AL.,** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on Defendants Dee Dee Brookhart and Bryan Perdue's motion, and supporting memorandum, for summary judgment (Doc. 49). For the reasons set forth below, the motion is **GRANTED in part and DENIED in part**.

## BACKGROUND

Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 on August 27, 2020 for deprivations of his constitutional rights while incarcerated at Lawrence Correctional Center ("Lawrence") (Doc. 1, 8). Plaintiff's complaint centers on events that took place on October 30, 2019 when he was moved from a lower cell to an upper floor. He was required to carry property upstairs that caused him to become dizzy, ultimately falling down a flight of stairs. Plaintiff claims that prison officials did not properly treat his conditions as a result of this fall. Therefore, he filed this lawsuit.

After a threshold review, pursuant to 28 U.S.C. § 1915A, Plaintiff was allowed to proceed on two counts against Defendants:

> **Count 1:** Eighth Amendment deliberate indifference claim against Perdue for ignoring Smith's medical permit and refusing to call a nurse for dizziness.
>
> **Count 2:** Eighth Amendment deliberate indifference claim against Dr. Pittman and Warden Brookhart for denying Smith care for his injuries sustained in the fall.

(Doc. 8).

Defendants Brookhart and Perdue filed their motion for summary judgment on the issue of exhaustion of administrative remedies on May 19, 2021 (Doc. 49). Defendant Pittman did not file an exhaustion motion for summary judgment. On June 4, 2021, Plaintiff filed a document that was titled "Motion for Summary Judgment," but it is the undersigned's impression that this is his response to Defendants' motion for summary judgment (Doc. 51). Defendant Pittman filed a response to Plaintiff's motion for summary judgment, conceding that Plaintiff has exhausted his administrative remedies as to her and that she also construed his motion to be his response to the other Defendants' motion for summary judgment (Doc. 52). Since the parties' filings do not involve a genuine issue of material fact, no evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) was necessary.

<u>**LEGAL STANDARDS**</u>

*Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party.

*Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). However, where there is no disputed issue of fact, no hearing is necessary.

*Exhaustion*

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011)). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted).

In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozzo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. ILL.

ADMIN. CODE, tit. 20, § 504.800, *et seq.* (2017). The regulations first require an inmate to attempt to resolve the dispute through his or her counselor. *Id.* at § 504.810(a).[1] If the counselor is unable to resolve the grievance, it is sent to the grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (the warden). *Id. at* § 504.830(e). The warden then provides the inmate with a written decision on the grievance. *Id.* If the inmate is not satisfied with the warden's decision, he or she has thirty days to appeal to the Director of the IDOC by sending the grievance to the Administrative Review Board ("ARB"). *Id.* at § 504.850(a). The ARB submits a written report of its findings and recommendations to the Director, who then makes a final determination "within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id.* at § 504.850(d), (e).

An inmate may also request that a grievance be handled as an emergency by forwarding the grievance directly to the warden. 20 ILL. ADMIN. CODE § 504.840 (2017). If the warden determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the [inmate]," then the grievance is handled on an emergency basis, meaning the warden will expedite processing of the grievance and respond to the inmate, indicating what action shall be or has been taken. *Id.* On the other hand, if the warden determines that the grievance should not be handled on an emergency basis, the inmate is notified in writing that he "may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.*

---

[1] There are exceptions to this rule. 20 ILL. ADMIN. CODE § 504.810(a), 504.870 (2017).

Though the Seventh Circuit requires strict adherence to the exhaustion requirement, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), an inmate is required to exhaust only those administrative remedies that are available to him. 42 U.S.C. § 1997e(a). Administrative remedies become "unavailable" to prisoners when prison officials fail to respond to a properly filed grievance or when prison officials' "affirmative misconduct" thwarts a prisoner from exhausting. *E.g.*, *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809.

### FACTUAL BACKGROUND

At all relevant times, Plaintiff has been an inmate with the Illinois Department of Corrections ("IDOC"). He is currently housed at Lawrence and filed this lawsuit regarding events that took place also at Lawrence (Doc. 49, p. 2).

Plaintiff alleges that Defendant Perdue moved Plaintiff from a lower set of cells to an upper floor on or around October 30, 2019. Before being moved, Plaintiff warned Defendant Perdue that he could not carry his property up the stairs due to anemia and blood deficiencies, as walking up the stairs would make him dizzy. Plaintiff explained he had a permit to have a lower cell. Defendant Perdue did not listen and made him move his property, despite Plaintiff's repeated complaints. Once moved, Plaintiff became dizzy and requested to see a nurse, but Defendant Perdue refused (Doc. 8, p. 2).

Later that day, Plaintiff's dizziness caused him to lose his balance, which resulted in him falling down the stairs. In this fall, he injured the right side of his head and leg, as well as his spinal cord. He was taken to the healthcare unit and saw Defendant Pittman. Plaintiff asked for pain medication, but Defendant Pittman did not give Plaintiff

medication. She also did not order an x-ray, despite Plaintiff's claims that he had a spinal cord injury and swelling in his head. Plaintiff filled out offender request forms, sent to Defendants Pittman and Brookhart, telling them of his injuries and asking to be seen by a neurologist, but they did not respond to these requests. Plaintiff contends he still suffers from pain in his head and twisted spinal cord (*Id.*).

It appears that Plaintiff submitted a series of approximately eight grievances to the ARB about a variety of issues dated from his fall on October 30, 2019 through December 2020. The parties seem to agree that 2-3 main grievances are at issue. With that said, the Court will quickly summarize all of the grievances filed during this timeframe.

First, there are a series of grievances that are unrelated to this cases' two claims, including a March 2, 2020 grievance (numbered 3-20-235) in which Plaintiff grieves a disciplinary ticket he received for attempting to make his own intoxicant in his cell. This grievance was received by the grievance office on March 13, 2020 and then denied by the ARB on December 11, 2020 (Doc. 49-3, p. 17; Doc. 49-1, p. 4). There is a similar February 25, 2020 grievance (numbered 3-20-236) that also concerned drug paraphernalia and racial discrimination in the disciplinary process that was received by the ARB (Doc. 49-3, pp. 53-62).[2]

---

[2] Around that time, Plaintiff also filed grievance 03-20-147 on February 23, 2020, which is unrelated to the claims in this lawsuit. In this grievance, Plaintiff grieves access to his legal boxes. This grievance was returned by the ARB as untimely, as it was not submitted within the appropriate timeframe on August 18, 2020 (Doc. 49-3, pp. 71-74). Plaintiff's cumulative counseling summary indicates that this grievance was received by the grievance office on March 10, 2020 "regarding his legal box in property" and was forwarded to the counselor for a response (Doc. 49-1, p. 5). It appears that this grievance was then re-submitted to the grievance office on March 18, 2020 (*Id.* at p. 4).

Plaintiff also filed a series of grievances with the ARB about the issues in this case after his October 2019 fall. On November 3, 2019, Plaintiff filed grievance number 11-19-18. In this grievance, Plaintiff seeks physical therapy after his fall (Doc. 49-3, pp. 56-57). While Plaintiff filed this grievance as an emergency, it was deemed a non-emergency on November 5, 2019 and returned to him with the direction to submit it in the "normal" manner and not as an emergency (*Id.* at p. 56). Instead, Plaintiff sent the grievance directly to the ARB, who returned it on November 15, 2019 with the instruction to provide the counselor and grievance officer's responses (*Id.* at p. 55). This grievance is recorded in Plaintiff's cumulative counseling summary as well, which supports the ARB's records. Plaintiff's cumulative counseling summary indicates that the grievance officer received this grievance, marked as an emergency, and forwarded it to the counselor for a response (Doc. 49-1, p. 6). On November 5, Plaintiff's cumulative counseling summary indicates the grievance was deemed a non-emergency and returned to Plaintiff (*Id.* at p. 6). Notably, a few weeks later, Plaintiff resubmitted this grievance and it was received by the grievance officer on December 3, 2019 and forwarded to the counselor for a response (*Id.* at p. 5). Plaintiff's cumulative counseling summary states that his counselor responded to this grievance on January 6, 2020 (*Id.*).

Also on November 3, 2019, Plaintiff filed a second grievance (grievance number 11-19-57). This grievance concerned the conduct of someone named "Sergeant Dupree," who was later identified through this lawsuit to be Defendant Perdue. In the grievance, Plaintiff requests physical therapy after the October 30, 2019 fall (Doc. 49-3, pp. 50-51). Plaintiff did not mark this grievance as an emergency (*Id.* at p. 50). It was reviewed by his

counselor on November 6, 2019 and then was received by the grievance officer on January 9, 2020. The grievance officer reviewed the grievance on March 5, 2020 and determined that the claims were unsubstantiated, as Plaintiff had been referred over to a physician (per the notes from the healthcare unit) and Defendant Perdue denied wrongdoing (*Id.* at p. 49). The CAO concurred with the decision and signed the grievance on March 9, 2020 (*Id.*). Plaintiff filled out the "Offender's Appeal to the Director" section of the form on March 10, 2020 and the grievance was stamped as "received" by the ARB on April 10, 2020 (*Id.* at p. 49). The ARB returned this grievance on July 20, 2020 as it was received out-of-time on April 10, 2020, more than 30 days past the CAO's decision and the issue "will not be addressed further" (*Id.* at p. 48). This grievance is recorded in Plaintiff's cumulative counseling summary as being received by his grievance officer on or around November 4, 2019 and was forwarded to the counselor for a response (Doc. 49-1, p. 6). Plaintiff's cumulative counseling summary indicates that the counselor responded to this grievance on January 6, 2020 (*Id.* at p. 5). It was then resubmitted on January 9, 2020 to the grievance office and the note indicates it is "regarding staff conduct and medical treatment" (*Id.*).

Plaintiff filed three grievances on February 23, 2020, all of which made their way to the ARB and some of which are related to the claims in this case. Grievance 03-20-059 was filed as an emergency grievance, in which Plaintiff grieves the medical care he received after his "September 30, 2019" fall (Doc. 49-3, pp. 38-39). Plaintiff also complains that he was not referred to a neurologist or other expert on spinal injuries after this fall. He further explains this is his second grievance about this issue. He filed the original grievance on November 2, 2019 and it was given the number 11-19-18 (*Id.* at pp. 38-39).

Defendant Brookhart expedited this grievance as an emergency on March 8, 2020. The grievance officer returned the grievance as the grievance did not cover an incident that occurred in the last 60-days, as allowed by Department Rule 504. Additionally, the grievance officer noted that this was a duplicate grievance of Plaintiff's November 2, 2019 grievance (grievance number 11-19-18) (*Id.* at p. 37). Even so, Plaintiff forwarded this grievance to the ARB, who returned it to Plaintiff on September 23, 2020 as it had not been submitted within the timeframe outlined by Department Rule 504 (*Id.* at p. 36). Per Defendants' records directly from the ARB, this grievance was written on February 23, 2020 and the first and second level reviews were conducted March 5 and 10, respectively (*Id.* at pp. 36-37). Plaintiff filled out the "offender appeal" section and signed it on March 20, 2020, and this grievance was stamped as received by the ARB on March 27, 2020 (*Id.*).

Plaintiff's second February 23, 2020 grievance (numbered 03-20-148) similarly references his original grievance on November 2, 2019 (numbered 11-19-18). He again mentions Dr. Pittman and requests to see a specialist after his fall (*Id.* at pp. 42-43). The counselor's response indicates that Plaintiff should follow appropriate procedure and submit the original grievance (grievance number 11-19-18) for review by the grievance officer (*Id.* at p. 42). Instead, it appears Plaintiff continued to send this grievance through the next steps, as there is both a grievance officer response and CAO signature (*Id.* at p. 41). The ARB received this grievance on May 6, 2020 (*Id.* at p. 41). The ARB responded on August 18, 2020 and also instructed Plaintiff to submit the original grievance with the grievance officer response for review (*Id.* at p. 40). Plaintiff's cumulative counseling summary indicates that this grievance was received by the grievance office on March 10,

2020 and was forwarded to the counselor for a response. The next day, on March 11, the Counselor responded to the grievance. Plaintiff's cumulative counseling summary states, "No incident date. Duplicate grievance per offender's own words, forward original #11-19-18 per proper DR504" (Doc. 49-1, p. 5). It appears this grievance was resubmitted and was received by the grievance office on March 18, 2020 (*Id.* at p. 4).

Plaintiff's third February 23, 2020 grievance (numbered 03-20-058) appears to be unrelated to the claims in this case, as it grieves Plaintiff's access to legal documents (Doc. 49-3, pp. 53-55). The ARB returned this grievance on July 8, 2020, requesting Plaintiff resubmit with the original grievance with a counselor's response and the grievance officer's response (*Id.* at p. 52). Plaintiff's cumulative counseling summary indicates this grievance was received by the grievance office on August 3, 2020 and was denied as it was a duplicate and out of time. The ARB stated that "Offender needs to follow proper DR504" (Doc. 49-1, p. 3). Plaintiff resubmitted this grievance to the grievance office on August 24, 2020 (*Id.* at p. 2).

Plaintiff also submitted approximately fourteen grievances at the institutional level, including some of the grievances previously discussed (*i.e.*, grievances with the following numbers: 11-19-18, 11-19-57, 3-20-59, 3-20-147, 3-20-148, 3-20-235, and 3-20-236) (Doc. 49-5, pp. 292). It appears that there are six grievances filed from the date of Plaintiff's fall on October 30, 2019 through August 27, 2020, when Plaintiff filed this lawsuit. For the sake of brevity, the Court declines to examine each of these grievances in-depth, as many of them are unrelated to the claims in this case (*e.g.*, Plaintiff's grievance 4-20-001 details issues with a stolen item while Plaintiff's March 22, 2020

grievance numbered 3-20-458 details issues with the prison's COVID-19 phone and mail policy) (Doc. 49-4, p. 4). The pertinent grievances have been outlined here from the ARB's records.

## DISCUSSION

Under the Prison Litigation Reform Act ("PLRA"), all prison inmates bringing an action under 42 U.S.C. §1983 must first exhaust all administrative remedies. *See* 42 U.S.C §1997e (a); *Pavey v. Conley*, 544 F.3d, 739, 740 (7th Cir. 2008). Defendants argue that Plaintiff has not properly exhausted his claims against Defendant Perdue and Brookhart prior to filing this lawsuit. Essentially, Defendants concede that while some of Plaintiff's grievances reference Defendant Perdue and his actions, they are procedurally defective and were not fully exhausted in accordance with the IDOC's rules and policies. Defendants further argue that Defendant Brookhart was not mentioned, nor were her actions described, in any of the grievances at issue. Therefore, they are entitled to summary judgment for Plaintiff's failure to exhaust administrative remedies. Plaintiff filed his own motion, which the parties and Court have interpreted as a response to Defendants' motion for summary judgment. In that response, Plaintiff argues that Grievance 11-19-57, filed on November 3, 2019, was fully exhausted because it reached the Administrative Review Board (Doc. 51).

As an initial matter, the Court agrees that Plaintiff failed to exhaust administrative remedies as for his claims related to Defendant Brookhart. Defendant Brookhart is the Warden of Lawrence and her name, or a description of her and her actions, is totally absent from Plaintiff's grievances. Grievances are intended to give prison officials notice

of a problem and a chance to correct it before they are subjected to a lawsuit; grievances are not intended to put an individual defendant on notice of a claim against him. *Jones v. Bock*, 549 U.S. 199, 219 (2007) ("We have identified the benefits of exhaustion to include allowing a prison to address complaints about the program it administers before being subjected to suit . . . . {E]arly notice to those who might later be sued . . . has not been through to be one of the leading purposes of the exhaustion requirement."); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) ("The exhaustion requirement's primary purpose is to alert the state to the problem and invite corrective action.") (internal quotation marks and alterations omitted; citation omitted); *Johnson v. Johnson,* 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation.").

The Illinois Administrative Code mandates that grievances include the name, or at least a description, of the persons involved in the complaint, ILL. ADMIN. CODE, tit. 20 § 504.810(c). The regulations instruct that grievances should include "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." ILL. ADMIN. CODE, tit. 20, § 504.810(c). Additionally, the Seventh Circuit indicates that an inmate should "articulat[e] what facts the prison could reasonably expect from a prisoner *in his position*." *Glick v. Walker*, No. 09-2472, 385 Fed. Appx. 579, 2010 U.S. App. LEXIS 14361, at *6-7 (7th Cir. July 13, 2010).

Here, Plaintiff has not described any of Defendant Brookhart's actions and does not mention her name in *any* of the grievances currently before the Court. While Defendant Brookhart may have responded to some of Plaintiff's grievances, responding alone is insufficient to put her on notice of a potential lawsuit against her, as she is required to respond to grievances as part of her job. Simply put, no grievances at issue refer to Defendant Brookhart by name, title, or even description, nor does it describe any conduct attributable to her. As such, Defendant Brookhart will be dismissed from this lawsuit.

The analysis is not as straightforward with Plaintiff's claims against Defendant Perdue. Defendant Perdue acknowledges that one grievance (11-19-57) in the record does mention him and it went through the appropriate steps before being sent to the ARB; however, it was received one day late by the ARB and, therefore, cannot exhaust Plaintiff's claims related to Defendant Perdue. Plaintiff's response is short; however he seems to argue that he did, in fact, exhaust administrative remedies prior to filing suit because he placed his grievances in the grievance box and exhausted this grievance (Doc. 51, p. 1). Defendants did not file a reply brief and therefore did not dispute Plaintiff's assertions regarding this grievance. Therefore, the Court must determine if this grievance, received one day late by the ARB, exhausted Plaintiff's claims as to Defendant Perdue prior to filing this lawsuit.

Grievance 11-19-57 was filed on November 3, 2019 (Doc. 49-3, p. 50). In this grievance, Plaintiff describes the conduct of someone he calls "Sergeant Dupree," who was later identified through this lawsuit to be Defendant Perdue. Plaintiff describes that

this individual told him to move cells despite Plaintiff's explanation that he cannot move cells due to various illnesses. Plaintiff also describes that he requested to see a nurse, but this individual refused to let him go. Plaintiff details his subsequent fall and desire to be seen by specialists. This grievance was reviewed by Plaintiff's counselor on November 6, 2019 before being forwarded to his grievance officer on or around January 9, 2020 (Doc. 49-1, p. 5). The grievance officer reviewed this grievance on March 5, 2020 and determined that his claims were unsubstantiated because Plaintiff, at that point, had been referred to a physician (per the notes from the healthcare unit) and Defendant Perdue denied wrongdoing (Doc. 49-3, p. 49). The CAO concurred with the decision and signed the grievance on March 9, 2020 (*Id.*). Plaintiff filled out the "Offender's Appeal to the Director" section of the form on March 10, 2020 and the grievance was stamped as "received" by the ARB on April 10, 2020 (*Id.*). The ARB returned this grievance on July 20, 2020 as it was received out-of-time on April 10, 2020, more than 30 days past the Chief Administrative Officer's decision and the issue "will not be addressed further" (*Id.* at p.48).

Defendant Perdue argues that because this grievance was received one day late, it cannot exhaust the claims related to him and his motion for summary judgment should be granted. In support, Defendant Perdue points to a Seventh Circuit decision in which the Court found that a plaintiff had not properly exhausted his claims after his appeal was returned by the ARB for insufficient postage and then subsequently denied upon resubmission for being untimely. *See Cannon v. Washington,* 418 F.3d 714, 717-18 (7th Cir. 2005). The reason the Seventh Circuit found that the *Cannon* plaintiff had not fully

exhausted was because his grievance reached the ARB more than six months after the incident date, which was in violation of an older IDOC department rule that is no longer in effect.[3] Ultimately, the Court determined that the error was the plaintiff's, as he had not included appropriate postage when submitting his grievance the first time to the ARB. The decision hinged on finding that this was the *plaintiff's* error and not the error of the prison mail system.

The Court is not convinced that the *Cannon* decision is analogous to the current situation, as it examines a department rule no longer in existence and one not presently at issue. Additionally, Defendants have not pointed to any evidence in the record to support that Plaintiff, and *not* the prison mail system, made an error in submitting this grievance. Contrary to Defendants' arguments, short delays in the exhaustion process, such as the ARB receiving a grievance one day outside the 30-day deadline, are not enough, without other proof or evidence, to show that a plaintiff has not exhausted his administrative remedies. For example, Defendants have offered no evidence suggesting when this grievance was put into the prison mail system and if it was indeed untimely. *See Dewalt v. Pitts*, No. 12-CV-118-MJR-SCW, 2013 WL 4051704, at *5 (S.D. Ill. Aug. 11, 2013). In fact, the Seventh Circuit has insinuated that the prison mailbox rule, which holds that a prisoner's court filing is deemed as "filed" the day it is placed in the prison mail system, applies to exhaustion. *See Burt v. Harrington*, No. 13-CV-794-NJR-DGW, 2017 WL 468211, at *7 (S.D. Ill. Feb. 3, 2017) (citing *Conley v. Anglin,* 513 Fed.Appx. 598, 601 (7th

---

[3] The current Department Rule 504.810(a) requires prisoners to grieve issues within 60-days of the incident. *See* 20 ILL. ADMIN. CODE § 504.810(a).

Cir. 2013) ("And though the defendants would like us to presume that § 504.850 and the ARB's own procedures do not recognize the "mailbox rule," they offered no support (and still don't) for the proposition."); *Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir. 2006) (holding prisoner had filed a timely appeal to the ARB by placing it in the prison mail system even though it was never received by the ARB).[4]

Practically speaking, the Court is aware that the prison mail system, at this time, was experiencing significant interruptions and delays as a result of the onset of the COVID-19 pandemic. The CAO signed off on the decision on March 9, 2020, Plaintiff completed his "Offender's Appeal to the Director" on March 10, 2020, and the grievance was stamped as "received" by the ARB on April 10, 2020. This was a time when virtually every institution and organization was experiencing significant disruptions and delays. On March 22, 2020 (in the middle of Plaintiff's appeal deadline for grievance number 11-19-57), Plaintiff filed a grievance related to the prison's newly-implemented COVID-19 protocols (Doc. 49-4, p. 75). The grievance explains that per a prison memorandum, dated March 14, 2020, prisoners are allowed two phone calls and one video visit. Additionally, Plaintiff outlines that per the Governor of Illinois's stay-at-home order, "snail mail will be very slow" (*Id.*). Plaintiff contends he is not being allowed his phone calls despite the policy outlined in the March 14, 2020 order and requests for his phone calls to be reinstated.

---

[4] *See Rutledge v. U.S.*, 230 F.3d 1041, 1052 (7th Cir. 2000) (holding that pleadings by pro se prisoners are *dependent* on the prison mail system to reach their destination, and therefore will be considered timely filed when a prisoner places them in that system).

Defendants have not offered evidence suggesting *when* grievance 11-19-57 was mailed to the ARB, nor have they supported their argument that a grievance mailed prior to the appeal deadline can be deemed "untimely." But there is evidence in the record of disruptions in prisoners' abilities to communicate with the outside world at this time due to the COVID-19 pandemic and newly-implemented prison protocols, as well as state protocols. Moreover, exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted). The Court may be more convinced if Plaintiff's grievance reached the ARB further outside the 30-day window. But here, receipt of a grievance one day late after the close of the appeal deadline "leaves open the very reasonable inference that the grievance was still submitted and therefore appealed in a timely manner." *Singleton v. Shah*, No. 17-CV-323-DRH-SCW, 2018 WL 3046461, at *4 (S.D.Ill. June 20, 2018). Here, because of the unique facts presented and the timeframe in which it was occurring (*i.e.*, the onset of a global pandemic), the ARB's receipt of Plaintiff's grievance one day after the appeal deadline, alone, is not sufficient, to carry its burden on the affirmative defense of exhaustion. *Id.*

The Administrative Code is clear that administrative remedies become "unavailable" to prisoners when prison officials fail to respond to a properly filed grievance or when prison officials' "affirmative misconduct" thwarts a prisoner from exhausting. *E.g., Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809. When the ARB denied Plaintiff's grievance as being untimely because it was received one day late, there was nothing else Plaintiff could do to exhaust this grievance. *See Dewalt,* 2013 WL 4051704 at *5 (adopting recommendation that grievance was exhausted

even though the ARB received the appeal one day late because appeal was mailed prior to thirty-day deadline and it "is deemed submitted the day that it was mailed").[5]

In sum, the Court concludes that Plaintiff has failed to exhaust his administrative remedies prior to filing his lawsuit for Defendant Brookhart, but that Defendants cannot carry their burden with respect to exhaustion as to Defendant Perdue. Defendants' motion for summary judgment must be granted in part and denied in part.

## CONCLUSION

The motion for summary judgment on the issue of exhaustion filed by Defendants Brookhart and Perdue (Doc. 49) is **GRANTED** in part and **DENIED** in part. Defendant Brookhart is **DISMISSED without prejudice** for Plaintiff's failure to exhaust.

This matter shall proceed on Plaintiff's claims against Defendants Perdue and Pittman. The stay on merits-based discovery (*see* Doc. 24) is **LIFTED** and the parties can proceed with discovery on the merits of Plaintiff's claims. A new scheduling order will be entered by separate order.

IT IS SO ORDERED.

DATED: February 2, 2022

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

---

[5] In addition, Plaintiff did attempt to continue to exhaust his administrative remedies by filing duplicate grievances in February 2020, which were all returned as duplicate grievances or as untimely and were not reviewed by the ARB. *See* Doc. 49-3, pp. 37-44.