## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JIMMIE SMITH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 3:20-CV-830-MAB** |
| ) | |
| **WARDEN BROOKHART, DOCTOR** ) | |
| **PITTMAN, and SERGEANT PURDUE,** ) | |
| ) | |
| **Defendants.** ) | |

### MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Presently before the Court is Defendant Dr. Lynn Pittman's motion for summary judgment (Docs. 86, 87). For the reasons set forth below, Dr. Pittman's motion for summary judgment is GRANTED (Doc. 86).

### BACKGROUND

Plaintiff Jimmie Smith was transferred to Lawrence Correctional Center ("Lawrence") in July 2019 (Doc. 87, p. 2; Doc. 87-3, pp. 1-2). On September 6, 2019, Plaintiff was evaluated by Dr. Pittman due to his complaints of anemia and dizziness (Doc. 87 at p. 3; Doc. 95, p. 2). Dr. Pittman determined that Plaintiff suffered from internal and external hemorrhoids, microcytic anemia, high blood pressure, and acid reflux (Doc. 87 at p. 3; Doc. 87-3 at p. 10). Dr. Pittman prescribed Plaintiff Vitamin D2, Vitamin B12, Vitamin C, FeSo4 (an iron supplement), Prilosec, Famotidine (Pepcid), and Fiberlax (Doc. 87 at p. 3; Doc. 87-3 at p. 10). Dr. Pittman also ordered for Plaintiff's complete blood count to be drawn again in four weeks and issued Plaintiff a low bunk permit (Doc. 87 at p. 3;

Doc. 87-3 at pp. 10 & 149). On October 4, 2019, Plaintiff's blood was drawn and a complete blood count was conducted, which revealed an improvement in Plaintiff's hemoglobin levels (Doc. 87 at p. 3; Doc. 87-3 at p. 187).

On October 30, 2019, Plaintiff was moved from a lower-level cell to an upper-level cell (Doc. 95 at p. 2; Doc. 95-2; Doc. 96, p. 1). At roughly 5:30 p.m. that evening, Plaintiff lost his balance and fell down a step (or steps), allegedly due to dizziness (Doc. 87 at p. 4; Doc. 87-3 at pp. 13 & 152; Doc. 95 at p. 2). Plaintiff states he injured his knee, back, and head during the fall (Doc. 95 at p. 2). A nurse responded to the incident and referred Plaintiff to be seen by Dr. Pittman (*Id.*). At approximately 6:15 p.m., Dr. Pittman evaluated Plaintiff's injuries from the fall and diagnosed him with a lumbar strain (*Id.* at pp. 2-3; Doc. 87 at p. 4). Accordingly, Dr. Pittman instructed Plaintiff to perform lumbar stretches, prescribed him Ibuprofen 400mg and Robaxin 500mg (a muscle relaxer), and issued him a low bunk and low gallery permit for one year (Doc. 87 at p. 4; Doc. 87-2 at transcript pp. 44-45). However, Dr. Pittman did not order diagnostic imaging, refer Plaintiff to a specialist, or refer Plaintiff to physical therapy (Doc. 87 at p. 4; Doc. 95 at p. 3).

On December 5, 2019, Plaintiff met with a nurse at Lawrence because of lower back and leg pain (Doc. 87-3 at p. 17). The nurse did not refer Plaintiff to a doctor at that time and instead prescribed him Acetaminophen 325mg (Tylenol) (*Id.*). On December 11, 2019, Dr. Pittman updated Plaintiff's chart without seeing Plaintiff and ordered additional supplements and blood work (*Id.* at p. 18). Two days later, Dr. Pittman met with Plaintiff to evaluate his complaints of dizziness, headaches, and lower back pain (Doc. 87 at p. 5; Doc. 87-3 at p. 18). Dr. Pittman ordered x-rays, modified Plaintiff's diet, performed

osteopathic manipulative therapy ("OMT") on Plaintiff, and referred him to physical therapy (Doc. 87 at p. 6; Doc. 87-3 at p. 18). An x-ray was performed on December 17, 2019, which demonstrated that Plaintiff's "bony alignment is normal" but also revealed "mild multilevel degenerative disc disease." (Doc. 87-3 at p. 133).

Plaintiff met with Dr. Pittman again on February 7, 2020 (*Id.* at p. 19). At that meeting, Plaintiff reported lower back pain and stiffness, and Dr. Pittman performed OMT on Plaintiff (*Id.*). Additionally, Plaintiff saw Dr. Pittman on March 11, 2020, due to complaints of bleeding hemorrhoids (*Id.* at p. 29). Dr. Pittman again performed OMT on Plaintiff and reviewed his stretching routine (*Id.*). Plaintiff subsequently met with Dr. Pittman on April 28, 2020, and May 27, 2020 (*Id.* at pp. 33 & 35).

Dr. Pittman left her employment at Lawrence on July 20, 2020 (Doc. 87-2 at transcript p. 17). Thereafter, on July 22, 2020, Dr. Thomann left a physical therapy note in Plaintiff's chart (Doc. 87-3 at p. 43). The note stated that a doctor ordered physical therapy for Plaintiff on December 13, 2019, but Plaintiff was not able to attend because of IDOC quarantine precautions related to COVID-19 (*Id.*). Due to the restrictions, Dr. Thomann developed a home exercise program for Plaintiff to perform based upon his diagnosis (*Id.* at pp. 43 & 168).

Plaintiff alleges that he continued to "complain of low back/lumbar spine symptoms including pain." (Doc. 95 at p. 4). He also alleges that he still has not received physical therapy or been allowed to see an orthopedic specialist for his back injury (*Id.*).

Plaintiff filed this suit on August 27, 2020 (Doc. 1). Following preliminary review, Plaintiff was permitted to proceed with a deliberate indifference claim against Dr.

Pittman and Warden Brookhart[1] (Doc. 8, p. 3).[2] Dr. Pittman has since filed the instant motion for summary judgment and supporting memorandum (Docs. 86, 87). Thereafter, Plaintiff filed a response in opposition (Doc. 95) and Dr. Pittman filed both a response to Plaintiff's statement of facts (Doc. 96) and a reply in support (Doc. 97).

<u>SUMMARY JUDGMENT STANDARD</u>

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.'" *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010) (quoting FED. R. CIV. P. 56(c)). "A genuine dispute of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Substantive law determines which facts are considered material. *See Jaranowski v. Indiana Harbor Belt R.R. Co.*, 72 F.4th 744, 749 (7th Cir. 2023). Moreover, although a non-movant receives the benefit of conflicting evidence and reasonable inferences, he or she is still required to produce evidence sufficient to establish the essential elements of his or her claims. *Jackson v. Sheriff of Winnebago County, Illinois*, 74 F.4th 496, 500 (7th Cir. 2023).

---

[1] Warden Brookhart was dismissed without prejudice after being granted summary judgment based upon Plaintiff's failure to exhaust administrative remedies (Doc. 55).
[2] Plaintiff was also permitted to proceed with one deliberate indifference claim against Defendant Purdue for his alleged actions related to Plaintiff's cell change and fall (Doc. 8, pp. 2-3). However, Plaintiff and Purdue have since reached a settlement agreement and Purdue has been dismissed (*see* Docs. 94, 100).

<u>DISCUSSION</u>

Dr. Pittman argues she is entitled to summary judgment because Plaintiff cannot demonstrate any of the required elements of a deliberate indifference claim (*see generally* Doc. 87). In response, Plaintiff contends that the Court should deny Dr. Pittman's motion for summary judgment because a question of material fact exists as to each element (*see* Doc. 95).

Pursuant to the Eighth Amendment, prison officials "must provide humane conditions of confinement" by, among other things, "ensur[ing] that inmates receive adequate food, clothing, shelter, and medical care[.]" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Accordingly, prison officials must provide healthcare to incarcerated persons who cannot obtain healthcare on their own. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021). "To determine if the Eighth Amendment has been violated in the prison medical context, we perform a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016); *see also King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (explaining that the first element is objective while the second element is subjective).

Specifically, to satisfy the first, objective element, "[a] medical need is considered sufficiently serious if the inmate's condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." *McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013) (quoting *Gomez v.*

*Randle,* 680 F.3d 859, 865 (7th Cir. 2012)). Meanwhile, to satisfy the second, subjective element, "the Supreme Court has instructed us that a plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." *Petties*, 836 F.3d at 728. "Even objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it *should* be known—is insufficient to make out a claim." *Id.* It is not "enough to show that a prison doctor committed malpractice." *Walker v. Peters*, 233 F.3d 494, 499 (7th Cir. 2000). Instead, Plaintiff was required to show that Dr. Pittman was essentially "criminally reckless" by ignoring a known risk. *McGee*, 721 F.3d at 481.

Here, Plaintiff's claim against Dr. Pittman fails because Plaintiff has not created a material issue of fact as to the second, subjective element. Assuming, for argument's sake, that Plaintiff had an objectively serious medical condition that Dr. Pittman knew of, Plaintiff's claim still fails because he has provided no evidence demonstrating that Dr. Pittman acted with deliberate indifference to his serious medical condition. For one, the record unequivocally refutes the argument that Dr. Pittman completely disregarded Plaintiff's medical condition by refusing to provide him with treatment (*see generally* Doc. 87-3). On the night of Plaintiff's injury, Dr. Pittman prescribed Plaintiff medications for his injuries, instructed him on stretching, and provided him with a low bunk and lower gallery permit (*Id.*; Doc. 87 at p. 4). Moreover, the record shows that at Plaintiff's next meeting with Dr. Pittman, she modified and prescribed additional treatment in response to the results of Plaintiff's prior treatment (Doc. 87-3 at p. 18). Dr. Pittman referred Plaintiff to physical therapy, ordered x-rays, performed OMT on Plaintiff, and modified his diet and supplements (*Id.*; Doc. 87 at p. 6).

Consequently, to demonstrate deliberate indifference in a situation where treatment has been provided, Plaintiff needed to present evidence demonstrating that Dr. Pittman's treatment or lack thereof constituted "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008)). Notably, however, "prison officials who are aware of a substantial risk of serious harm may not be held liable if they responded reasonably to the risk, even if the harm was not ultimately averted." *Walker*, 233 F.3d at 499.

Here, Plaintiff has provided no evidence demonstrating that Dr. Pittman's treatment constituted a "substantial departure from accepted professional judgment, practice, or standards[.]" *Roe*, 631 F.3d at 857 (7th Cir. 2011). To the contrary, Dr. Pittman testified that she believed she provided Plaintiff with the best care possible given the circumstances (Doc. 87-2 at transcript p. 85). In fact, Dr. Pittman's willingness to modify Plaintiff's treatment in light of his progress further demonstrates the reasonableness of her treatment (*see* Doc. 87-3 at p. 18). Therefore, because Plaintiff has provided no evidence to support his claim, the Court finds that Dr. Pittman's treatment of Plaintiff was both reasonable and based upon her professional judgment. *See Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016) ("[A] treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment.").

Moreover, Plaintiff's claims that Dr. Pittman should have immediately ordered him an x-ray or referred him to a specialist are unavailing. Critically, Plaintiff's injuries did not create a situation where only one course of action was reasonable, such as when a person is not breathing so the only reasonable course of action is to administer CPR. *See Walker*, 233 F.3d at 499 (where there is no evidence that an inmate's symptoms plainly call for a particular treatment, the question hinges upon whether the proffered treatment was woefully inadequate). Although Plaintiff may have preferred a different treatment, the Eighth Amendment does not entitle him to his preferred course of treatment. *See Grund v. Murphy*, 736 F. App'x 601, 604 (7th Cir. 2018). In other words, although Plaintiff claims Dr. Pittman should have provided a more aggressive course of treatment, the Court's analysis focuses on the reasonableness of Dr. Pittman's treatment and not Plaintiff's subjective beliefs as to the sufficiency of his treatment. As such, Plaintiff's unsupported arguments related to his preferred treatment are not sufficient evidence to create an issue for the jury as to the reasonableness of Dr. Pittman's care. *See Zaya*, 836 F.3d at 805 ("When the plaintiff provides evidence from which a reasonable jury could conclude that the defendant didn't honestly believe his proffered medical explanation, summary judgment is unwarranted.").

Finally, Plaintiff argues Dr. Pittman was deliberately indifferent by delaying or altogether denying him access to physical therapy. These arguments are equally unavailing. As noted above, Plaintiff's personal preference for physical therapy to have occurred sooner does not constitute evidence that Dr. Pittman prescribed a course of treatment that she knew to be unreasonable given Plaintiff's situation. *Id.* Furthermore,

Plaintiff has provided no explanation as to why Dr. Pittman should be held accountable for the delay that occurred after she prescribed him physical therapy when she was not responsible for administering Plaintiff's physical therapy. *See Petties*, 836 F.3d at 730 (evidence of an "inexplicable delay" may support an inference of deliberate indifference when it serves no penological interest). Similarly, Plaintiff has provided no evidence or explanation as to why Dr. Pittman should be held accountable for the delay in receiving physical therapy that was the result of an unprecedented global pandemic. *Pearson v. Manlove*, No. 20-CV-487-WMC, 2021 WL 1966601, at *2 (W.D. Wis. May 17, 2021) ("Plaintiff's complaint fails to allege any facts to suggest that his condition required urgent treatment or to otherwise support an inference that defendants' actions or inactions with respect to his plantar fasciitis were unreasonable when factoring in the unprecedented circumstances of the pandemic, in which ordinary citizens across the country, not just those in prisons, were being temporarily denied treatment for non-urgent health conditions."). In addition, Plaintiff was provided with alternative treatment through Dr. Thomann's home exercise program (Doc. 87-3 at pp. 43 & 168). In light of these facts and the absence of any evidence to support Plaintiff's contentions, no reasonable jury could find Dr. Pittman was deliberately indifferent based upon the treatment she provided to Plaintiff.

## CONCLUSION

For the reasons explained above, Dr. Pittman's motion for summary judgment is **GRANTED** (Doc. 86). Additionally, because Defendant Brookhart has previously been granted summary judgment based upon Plaintiff's failure to exhaust administrative

remedies (Doc. 55) and Plaintiff has fully settled his claim against Defendant Purdue (*see* Docs. 94, 100), this case is **DISMISSED with prejudice**.

The Clerk of Court is **DIRECTED** to enter judgment and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED:  November 29, 2023**

s/ Mark A. Beatty_____
**MARK A. BEATTY**
**United States Magistrate Judge**